IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | CRIMINAL NUMBER H-18-0403 |
| JUAN GUTIERREZ, | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

On July 12, 2018, a one count indictment was filed charging defendant, Juan Gutierrez, with violating 18 U.S.C. § 922(g)(1) by knowingly possessing in and affecting commerce eleven different firearms that had been shipped in interstate commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year.[1] Pending before the court is Defendant's Motion to Suppress ("Motion to Suppress") (Docket Entry No. 19), to which the United States has filed a Response to Motion to Suppress ("Response") (Docket Entry No. 21). For the reasons stated below, defendant's motion to suppress will be denied.

**I. Background**

On December 13, 2017, Baytown police officer Dallas Bish appeared before Harris County Magistrate Oshea Spencer seeking a

---

[1]See Indictment, Docket Entry No. 1.

search warrant for defendant's residence in Baytown, Texas. Bish presented to the Magistrate a 3-page Search Warrant Affidavit stating a belief that the defendant possessed illegal controlled substances, such as marijuana, cocaine, methamphetamine, promethazine, and synthetic cannabinoids.[2] The affidavit stated that on or about November 1, 2017, a confidential informant ("C/I") had disclosed that an individual known as "Blacky" sold cocaine from a particular residence in Baytown, Texas, that Blacky lived at the residence, and claimed to be a member of the Mexican Mafia. The affidavit also stated that the C/I had seen multiple guns in Blacky's house.[3] Officer Bish stated that the C/I later identified a picture of the defendant as the person called "Blacky," and told Officer Bish that he had been inside "Blacky's" residence within the past 48 hours and had seen powder cocaine that "Blacky" kept and sold there.[4]

Officer Bish sought authority to dispense with any "knock-and-announce" requirement by stating in the affidavit that surveillance cameras and possibly a police scanner had been installed at the residence, firearms had been observed at the residence, and the

---

[2] Search Warrant Affidavit, Exhibit A to Defendant's Motion to Suppress, Docket Entry No. 19-1.

[3] Id. at 2.

[4] Id. at 2-3.

defendant had previously threatened someone and kept the narcotics close at hand.[5] The affidavit concluded:

> WHEREFORE, Affiant asks for the issuance of a Warrant that will authorize the search of said suspected place for said personal property and seizure of the same for the arrest of each suspected party, and to take custody of all seized property and safe keep such property as provided by Statute.[6]

Based on Officer Bish's affidavit, Magistrate Spencer concluded that probable cause existed for the issuance of a Search Warrant.[7] The warrant expressly incorporated the affidavit by stating that Officer Bish, the Affiant, "came before me this day with a sworn affidavit, which is attached hereto and is specifically incorporated by reference for all purposes requesting a search warrant."[8] The warrant described the residence in detail, found probable cause to dispense with any knock-and-announce requirement, and directed the officer receiving the warrant to execute it within three days.[9]

Baytown police officers including Officer Bish executed the search warrant on December 14, 2017, detaining the defendant and transporting him to the Baytown jail, and seizing narcotics,

---

[5]Id. at 3.

[6]Id.

[7]Search Warrant, Exhibit B to Defendant's Motion to Suppress, Docket Entry No. 19-2, p. 1.

[8]Id. at 1.

[9]Id. at 1-2.

currency, firearms, ammunition, body armor, and other items.[10] After completing the search, Officer Bish conducted an in-custody interview of the defendant at the Baytown jail, where the defendant made statements related to the items found during the search of his residence. Defendant moves to suppress as fruits of an unconstitutional search all of the evidence seized during the search of his residence and statements made in the course of his subsequent in-custody interview.[11]

## II. **Analysis**

Defendant argues that the evidence seized from his residence and the statements he made in custody should be suppressed because the search warrant relied upon to search his residence did not satisfy the Fourth Amendment's particularity requirement.[12] Quoting United States v. Allen, 625 F.3d 830, 835 (5th Cir. 2010), cert. denied, 132 S. Ct. 1632 (2012), defendant argues that "[t]he uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."[13] Citing United States v. Triplett, 684 F.3d 500, 505 (5th Cir. 2012), and Groh v. Ramirez, 124 S. Ct. 1284, 1289-90 (2004), defendant argues that

---

[10]Defendant's Motion to Suppress, Docket Entry No. 19, p. 3.

[11]Id. at 5.

[12]Id. at 4.

[13]Id.

-4-

> [t]he warrant's incorporation of the affidavit does not save it. "The law permits an affidavit incorporated by reference to amplify particularity, notwithstanding that, by its terms, the Fourth Amendment 'requires particularity in the warrant, not in the supporting documents.'" . . . The warrant here lacks any terms or phrases which the supporting affidavit can amplify; it lacks even the vaguest direction as to what items are subject to law enforcement search and seizure.[14]

The United States argues that defendant's motion to suppress should be denied because the items and statements that the defendant seeks to suppress fall within the good-faith exception to the exclusionary rule, and because the magistrate issuing the warrant had a substantial basis for believing there was probable cause for the search.[15] Citing Allen, 625 F.3d at 835, and asserting that the warrant "specifically incorporates into the search warrant the search warrant affidavit,"[16] the United States argues that "[t]his is sufficient to meet the particularity requirement of the Fourth Amendment."[17] The United States argues that "[a]s a consequence not only was the search warrant in this case a valid warrant, but even if it were not, officers were justified in a good faith belief in the validity of the warrant."[18]

---

[14] Id. at 4-5.

[15] Response, Docket Entry No. 21, pp. 5-6.

[16] Id. at 5.

[17] Id.

[18] Id. at 6.

-5-

## A. Applicable Law

The Fourth Amendment commands that "no Warrants shall issue" except those "particularly describing the . . . things to be seized." United States Constitution Amendment IV. "The Amendment says nothing about suppressing evidence obtained in violation of this command. That rule — the exclusionary rule — is a 'prudential' doctrine, . . . created by [the Supreme] Court to compel respect for the constitutional guaranty." <u>Davis v. United States</u>, 131 S. Ct. 2419, 2426 (2011) (quoting <u>Pennsylvania Board of Probation and Parole v. Scott</u>, 118 S. Ct. 2014, 2019 (1998), and <u>Elkins v. United States</u>, 80 S. Ct. 1437, 1444 (1960)). When applicable, the exclusionary rule prohibits the use of evidence obtained in violation of the Fourth Amendment. However, a violation of the Fourth Amendment does not necessarily mean that the exclusionary rule applies. "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." <u>Id.</u> "The rule's sole purpose . . . is to deter Fourth Amendment violations." <u>Id.</u> Courts focus on the efficiency of the rule in deterring future Fourth Amendment violations, and weigh those benefits against the costs. <u>Id.</u> (citing <u>Herring v. United States</u>, 129 S. Ct. 695, 700-01 (2009)). "The principal cost of applying the rule is . . . letting guilty and possibly dangerous defendants go free . . ." <u>Herring</u>, 129 S. Ct. at 701 (quoting <u>United States v. Leon</u>, 104 S. Ct. 3405, 3412 (1984)).

When a search has been conducted in accordance with a warrant, courts use a two-part test to determine whether the exclusionary rule should apply. United States v. Johnson, 476 F. App'x 314, 315 (5th Cir. 2012) (per curiam) (citing United States v. Froman, 355 F.3d 882, 888 (5th Cir. 2004)). "The first step involves examining whether the good faith exception to the exclusionary rule applies." Id. "If the good faith exception applies, no further analysis is necessary unless the case involves a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'" Id. (citing United States v. Payne, 341 F.3d 393, 399 (5th Cir. 2003)). The second step requires the court to determine whether the warrant was supported by probable cause. Payne, 341 F.3d at 399.

The good faith exception to the exclusionary rule was adopted by the Supreme Court in Leon, 104 S. Ct. at 3411-15, 3421-22. In a companion case to Leon, the Court held that the "exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid." Massachusetts v. Sheppard, 104 S. Ct. at 3424, 3427 (1984). See also United States v. Jarman, 847 F.3d 259, 264 (5th Cir. 2017) ("The good faith exception bars the application of the exclusionary rule to exclude evidence obtained pursuant to a warrant if law enforcement officers act under an objectively reasonable, good faith belief that the search warrant in question

-7-

is valid — even if it, in fact, is not [valid]."). Citing the deterrence of police misconduct as the primary purpose of the exclusionary rule, the Supreme Court explained in Leon "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 104 S. Ct. at 3420.

The exclusionary rule is therefore not applicable when police act with an "objectively reasonable good-faith belief that their conduct is lawful." Davis, 131 S. Ct. at 2427 (citing Leon, 104 S. Ct. at 3413). The good faith exception poses the following question: "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 104 S. Ct. at 3420 n. 23. Emphasizing that a law enforcement officer's reliance on a magistrate's determination of probable cause needs to be objectively reasonable, the Leon Court acknowledged that evidence seized in reliance on a warrant may be suppressed if one of the following four criteria is met: (1) the magistrate abandons his neutral, detached role and acts as a rubber stamp; (2) the magistrate was misled by information in an affidavit that the affiant knew to be false or recklessly disregarded its falsity; (3) an affidavit is so lacking in indicia of probable cause as to render belief in it entirely unreasonable (a "bare bones" affidavit), and (4) a warrant is so

facially deficient (by failing to particularize the place to be searched or the people or things to be seized) that the executing officers cannot reasonably presume it to be valid. 104 S. Ct. at 3421.

B.  **The Good Faith Exception Applies**

Citing Groh, 124 S. Ct. at 1290-91, defendant argues that the evidence seized from his residence and the statements he made in custody should be suppressed because the search warrant did not satisfy the Fourth Amendment's particularity requirement, and that the warrant's incorporation of the affidavit by reference does not save it because the Fourth Amendment requires particularity in the warrant, not in the supporting documents.[19] In Groh the Supreme Court denied qualified immunity to officers who relied on a warrant that did not particularly describe the items to be seized. Stating that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents," id. at 1289, the Court found the warrant to be facially invalid because it described the house to be searched but did not describe the items to be seized. Although an attached affidavit contained a list of items to be seized, the Court observed that the affidavit was not expressly incorporated into the warrant itself, and "[t]he mere fact that the Magistrate issued a warrant does not necessarily

---

[19]Defendant's Motion to Suppress, Docket Entry No. 19, p. 4.

establish that he agreed that the scope of the search should be as broad as the affiant's request." Id. at 1292. The Court concluded that the search conducted pursuant to the warrant that did not describe the items to be seized was an unconstitutional "warrantless" search.[20] Id. at 1290-91, 1294.

The warrant in this case authorizes the search of a residence described with particularity in the body of the warrant, but the body of the warrant does not describe the evidence sought or the things or persons to be seized. The warrant does, however, use the following language to expressly incorporate the affidavit: "[The Affiant] came before me this day with a sworn affidavit, which is attached hereto and is specifically incorporated by reference for all purposes . . ."[21] The affidavit incorporated into the warrant by reference describes with particularity the residence to be searched,[22] states that the residence is "in charge of and

---

[20]While Groh addressed the standard for qualified immunity in a civil action, "the Court specified that if the case had arisen in the exclusionary rule context, the good-faith exception would not apply because both qualified immunity and the good faith exception involve 'the same standard of objective reasonableness.'" Evans v. Davis, 875 F.3d 210, 219 n.8 (5th Cir. 2017) (quoting Groh, 124 S. Ct. at 1294 n.8 (quoting Malley v. Briggs, 106 S. Ct. 1092, 1098 (1986)("[W]e hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in Leon, . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest.")).

[21]Search Warrant, Exhibit B to Defendant's Motion to Suppress, Docket Entry No. 19-2.

[22]Search Warrant Affidavit, Exhibit A to Defendant's Motion to
(continued...)

controlled by Juan Angel Gutierrez, a white male born July 13, 1970, hereafter styled suspected party,"[23] that the suspected party is believed to be "in possession of a Texas Controlled Substance, to wit: marijuana, cocaine, methamphetamine, promethazine, and synthetic cannabinoids,"[24] and that the residence had previously been flagged by an officer of the Baytown Police Department for "firearms being inside the residence."[25] The affidavit also states: "Your Affiant knows through training and experience that persons involved in the sale and distribution of narcotics commonly keep a firearm on or in close proximity to their person and/or their narcotics at all times to protect them from being robbed."[26] The affidavit states: "WHEREFORE, AFFIANT asks for issuance of a warrant that will authorize him to search said suspected place and premises for said property and seize the same and to arrest each said described and accused person."[27] The affidavit is signed by both the affiant and magistrate.[28] Because the warrant in this case expressly incorporated the affidavit, and because both the warrant

---

[22](...continued)
Suppress, Docket Entry No. 19-1, p. 1.

[23] Id. at 2.

[24] Id.

[25] Id. at 3.

[26] Id.

[27] Id.

[28] Id.

and the affidavit were signed by the magistrate, the court concludes that any deficiency in the warrant is cured by the incorporation of the attached affidavit by reference. See Evans, 875 F.3d at 220 (recognizing that the magistrate's signature of both a warrant and an accompanying affidavit distinguished the facts of that case from Groh and that, consequently, "the state habeas court would not be unreasonable in finding the case records would be subject to the good-faith exception").

The court's conclusion that the good faith exception to the exclusionary rule applies in this case is supported by the Fifth Circuit's opinions in Allen, 625 F.3d at 830, and Evans, 875 F.3d at 210. In Allen, the Government conceded that the warrant failed the particularity requirement because the warrant did not incorporate by reference the list of items to be seized. 625 F.3d at 838. The Fifth Circuit nonetheless affirmed the district court's application of the good faith exception, because "[t]he ultimate mistake was not that the documentation was insufficient to support issuance of the warrant, but that the attachment and affidavit were not properly incorporated into the warrant by reference." Id. The Fifth Circuit explained that any technical error in the preparation of the warrant applications was not so obvious that any reasonable officer would have noticed it and concluded that, despite the magistrate's approval, the warrant was unworthy of reliance. Id. at 840 (quoting Herring, 129 S. Ct. at

700) ("The negligent mistake in the warrant does not require 'the extreme sanction of exclusion.'")). In Allen "[t]he distinguishing factor" for the Fifth Circuit was "that the magistrate judge signed not only the warrant, but also the affidavit, to which the list of items to be seized was attached." Id. at 839. The Fifth Circuit explained that this gave the executing officer an "additional objective reason to believe the warrant was valid." Id. "Because of this, the officer's conduct was less culpable, and therefore less likely to be deterred by applying the exclusionary rule, than the conduct in Groh." Id. In Evans the Fifth Circuit observed:

> Even though the Court in Groh held that it is the warrant itself that must meet the particularity requirement, the Court has left open whether a warrant may incorporate other documents through reference or accompaniment to meet the particularity requirement. . . The Court expressly refused to hold "that the Fourth Amendment prohibits a warrant from cross-referencing other documents." . . . The Court then went on to note that "most," but not all, circuits allow a warrant to be saved by a referenced and accompanying affidavit. . . But the Groh affidavit was neither referenced nor accompanying, the Court therefore cut its analysis of incorporation short.

875 F.3d at 219 n.8 (citing Groh, 124 S. Ct. at 1289-90).

In this case the magistrate's signature on both the warrant and the affidavit, coupled with the language in the warrant expressly incorporating into the warrant by reference, gave the executing officers objective reason to believe the warrant was valid. As the Fifth Circuit observed in Allen "the magistrate judge's signature on the affidavit reduces the concern that he did

-13-

not agree to the scope of the search as defined and limited therein." 625 F.3d at 839. The officers' good faith belief in this case that the warrant was constitutionally sound was supported by the magistrate's signature on both the warrant and the affidavit and by the warrant's language expressly incorporating the affidavit by reference. Accordingly, the court concludes that the good faith exception to the exclusionary rule applies and that the Fourth Amendment does not require suppression of the evidence seized or the statements made by the defendant in custody.

### III. **Conclusions and Order**

For the reasons stated in § II, above, the court concludes that it was not objectively unreasonable for the officers executing the warrant to believe that the warrant established probable cause, that the good-faith exception to the exclusionary rule applies. Accordingly, Defendant's Motion to Suppress Evidence (Docket Entry No. 19) is **DENIED**.

Trial in this case is set for November 19, 2018, at 1:00 p.m.

The court will conduct a final pretrial conference on November 15, 2018, in Courtroom 9-B (Ninth Floor), United States Courthouse, 515 Rusk Avenue Houston, Texas 77002, at 11:30 a.m. Defendant and all counsel are **ORDERED** to attend the conference.

No later than November 13, 2018, all counsel will file:

(1) a proposed jury charge,

(2) exhibit lists, and

(3) witness lists.

Counsel will also deliver to each other and to the court's case manager copies of all exhibits.

**SIGNED** at Houston, Texas, on this 31st day of October, 2018.

                                SIM LAKE
                                UNITED STATES DISTRICT JUDGE